## PENNSYLVANIA R. CO. v. WELDY.

(Circuit Court of Appeals, Third Circuit. June 25, 1912.)

No. 6 (1,536).

1. Master and Servant (§§ 286, 289*)—Action for Injury to Servant—Questions for Jury.

Plaintiff's intestate was employed by defendant railroad company on a tug used in towing car floats. While he was standing in the narrow space between a line of cars and the edge of a float at night, to assist in making it fast alongside the tug, the bow of the approaching tug came in contact with the side of the float, and deceased was crushed against the side of a car, and killed by a buffer of rope around the stem of the tug, intended to be interposed between that and the float, but which was placed too high for that purpose when the flat was loaded. There was evidence that deceased had worked on that particular tug one day. *Held*, that the question of defendant's negligence in failing to exercise due care to make safe the place where deceased was required to work, as well as the latter's contributory negligence, was for the jury, whether such question arose under the common law or under the New Jersey Employer's Liability Act of April 13, 1909 (P. L. p. 114), which on that subject is largely, if not entirely, declaratory of the common law.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1001, 1006, 1008, 1010–1015; 1017–1033, 1036–1042, 1044, 1046–1050, 1089, 1090, 1092–1132; Dec. Dig. §§ 286, 289.*]

2. Master and Servant (§ 293*)—Action for Death of Servant—Instructions.

Instructions in an action for the death of an employé, based on the alleged negligence of the master in failing to provide a reasonably safe place for the servant to work, considered and approved.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1148–1156, 1158–1160; Dec. Dig. § 293.*]

In Error to the Circuit Court of the United States for the District of New Jersey.

Action at law by Elizabeth G. Weldy, administratrix of Jacob E. Weldy, Jr., deceased, against the Pennsylvania Railroad Company. Judgment for plaintiff, and defendant brings error. Affirmed.

Alan H. Strong, of New Brunswick, N. J., for plaintiff in error.

Robert H. McCarter, of Newark, N. J., for defendant in error.

Before GRAY and BUFFINGTON, Circuit Judges, and CROSS, District Judge.

GRAY, Circuit Judge. [1] The defendant in error, who was the plaintiff below, recovered a judgment on a verdict for damages for the death of her husband, while in the discharge of his duties, by reason of the alleged negligence of his employer, the plaintiff in error.

The declaration contains three counts. The gravamen of the action, as contended by the defendant in error, was the failure of the employer to exercise due and reasonable care to make safe the place in which decedent was required to work. The neglect of this primary duty, it is contended, is evidenced by the permitted existence of certain more or less permanent and dangerous conditions pertaining to

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the place in which decedent was required to work, within defendant's control and as to which defendant was, or should have been, informed; the duty to guard against such dangerous conditions being, of course, included within the general duty of providing a safe place, etc.

Liability of the defendant is predicated in the first and second counts upon the common law, and in the third count upon the statute of New Jersey, of 1909, known as the "Employer's Liability Act." P. L. p. 114.

At the time of the occurrences resulting in the death of the decedent, defendant was in possession, management and control of a railroad and cars and of certain tug boats and floats, for the purpose of conducting its transportation business and of transferring its said cars from Jersey City to divers points on the Hudson River and elsewhere. In the conduct of this business, freight cars, loaded or otherwise, were brought upon the railroad to the dock and there pushed onto long floats moored endwise, so that the tracks which ran on each side of the float might be in line with the tracks upon which the cars were placed. About six of these cars were generally loaded upon each side of the float, leaving narrow passageways between the rail on each side of the float and the sides of the cars. After the cars had been thus loaded, one of the defendant's tugs came alongside and towed the float thus loaded to its destination. This was the general course of business in which decedent had been employed by the defendant for about six months.

The particular employment of the decedent was that of a deck hand and floatman on the tugs and floats engaged in this transfer work, his special duty being, when the tug came to or alongside of the float, to get onto the float and see if it was ready to be towed, and attach the lines from the tug to the float for that purpose. On the night in question, one of these floats—a wooden one 252 feet long and 33 feet wide—had been loaded by the defendant's servants with 12 cars, 6 on each side of the float, and the defendant's tug "Wilmington," on which decedent was employed, approached the float to perform its towing service. When near enough, the decedent boarded the float and, in the performance of his duty, went to the office on the dock to receive orders as to the destination of the cars. He returned and reported to the captain, who was in charge of the tug and under whose orders he was, that the float was to go to Greenpoint, and that it was all ready to be towed. The tug then backed out into the river a short distance, pulling the float after it. It then began to swing around, so that its side might be against the side of the float for the purpose of towing. During this process of swinging, the tug was attached by a short line from the bow to a cleat in the narrow passageway between the rail of the float and the sides of the cars. While this movement was being executed, it was necessary for the tug, when head on to the float, to approach it so that the line from its bow might be slackened and moved to another cleat for towing purposes. The decedent, in the performance of his duty, was standing at the cleat to which the rope from the tug was attached, and as the tug

approached was loosening it from the cleat to which it was fastened. While in the act of doing so, the bow of the tug came in contact with the side of the float, and a large buffer made of hemp rope, which embraced the stem of the tug, protruded some sixteen inches beyond it over the rail of the float, and crushed the decedent against the side of the car immediately back of him.

Although there is some dispute as to the fact, there is testimony tending to show that the decedent had only been employed on the tug "Wilmington" since the night before the accident, having been previously employed upon another and smaller tug. The "Wilmington" was a very large tug and the bow was necessarily high out of the water. At all events, it is conceded that the rope buffer, intended to act as a fender between the stem of the tug and the side of the float below the level of the deck, was so placed as to be considerably higher than the rail of the float. The float was made low in the water by the heavily loaded cars, and had a list of four or five inches on the side towards the tug. Of course, it may be said that the accident was due to the float being loaded so deep and being listed to one side, or to the buffer being too high on the stem of the large tug. As said by the learned judge of the court below, the expression "too high" or "too low" is relative. There is no evidence, however, to show that the float was deeper in the water than usual when it had its full load upon it, or that it was listed more to one side than was usual, owing to the unavoidable difference in the loaded weight of the cars on one side and the other. But the buffer on the bow of the tug could have been readily adjusted so as to perform its proper function between the stem of the tug and the float, and the obvious danger to one standing in the narrow space between the rail of the float and the cars could thus have been avoided. The work was being performed at midnight, and the decedent, if only employed the night before on the tug, was hardly chargeable with knowledge of the conditions which created the danger that resulted in his death. As the maneuver described, by which the tug prepared to take charge of the float for towing purposes, was the ordinary and necessary one, and involved the head-on approach of the tug to the float, the situation was a constantly recurring one. This is not only inferable from the evidence, but from the very presence of the buffer on the stem of the tug, the proper function of which was to be interposed between that stem and the side of the tug below the level of the deck of the float. The placing of this buffer too high to perform its proper function, created the dangerous condition to which the decedent was exposed.

The question therefore arises, whether the defendant has exercised that reasonable care which it is the duty of a master to exercise, in order to maintain reasonably safe the conditions under which his servant is required to work. We think this question was properly and fairly presented to the jury by the learned judge of the court below. The dangerous condition was the result of the high placement of the buffer on the stem of the tug, as compared with the height of the loaded float from the water to the top of the rail. We think this condition, resulting from an improper adjustment of the buffer, in its

relation to the height of the rail of the float, is sufficiently covered as a ground for the charge of negligence in the first two counts of the declaration.

In respect to the third count, alleging liability under the statute of New Jersey above referred to, it is only necessary to say that we think this statute is, in all respects save one, declaratory of the common law. It declares that the master is responsible for any defect in the condition of the place, etc., used in his business, which, by reason of his negligence or that of any person in his service intrusted by him with that duty, has not been discovered or remedied. The plain purpose of the act was to do away with the doctrine of fellow servant in connection with the rule of safety in working places. What constitutes an unsafe place in which to work, within the meaning of the common law rule, or a defective condition in place, works, or machinery, within the meaning of the statute of New Jersey, depends upon the circumstances of each particular case, when viewed in the light of the experience and practice of men ordinarily prudent and careful in the performance of their duties in the premises. The dangers to be guarded against are, of course, not such as are inherent in the work itself, but such as are obvious and remediable by the exercise of ordinary care.

We think, therefore, that the first assignment of error, on the ground that the court below did not give peremptory instructions to the jury in favor of the defendant, is without merit and must be overruled.

[2] We have carefully considered the other and numerous assignments of error, based upon the charge of the court to the jury and upon its failure to give certain instructions requested by the defendant below, and think they are equally without merit. The charge as a whole was, under the evidence, exceedingly fair to the defendant. The charge is a long one and evidently prepared with great care. The attention of the jury was repeatedly called to the question presented for its determination, in such language as the following:

"In other words, would the defendant, in the exercise of that care and diligence, have discovered the likelihood of this fender protruding over the boat and the striking and crushing of its employé, whose duty it was—if you so find—to be at that place, if the float should be weighted down with heavy cars or should be made to list on that side by the improper and careless placing of the heavier cars on that side?"

And again:

"If you find that the defendant, in the exercise of that ordinary care and reasonable diligence, could not have discovered such a danger, then it is not liable, notwithstanding that injury resulted, its liability being dependent upon such a dangerous condition being made manifest or likely by the exercise of ordinary care and reasonable diligence."

On the whole, we think the case was fairly tried and properly submitted to the jury, and the judgment below is therefore affirmed.